UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    *Plaintiff*,<br><br>  -against-<br><br>WILLIAM Z. ("BILLY") MCFARLAND, FYRE MEDIA, INC., MAGNISES, INC., GRANT MARGOLIN and DANIEL SIMON,<br><br>    *Defendants.* | Case No. 18-CV-6634 (JGK) |

MEMORANDUM OF LAW IN SUPPORT OF WILLIAM Z. ("BILLY")
McFARLAND'S MOTION TO CLARIFY FINAL JUDGMENT

Harlan Protass
PROTASS LAW PLLC
260 Madison Avenue
22nd Floor
New York, NY 10016
T. 212-455-0335
F. 646-607-0760
hprotass@protasslaw.com

*Counsel for Defendant*
*William Z. ("Billy") McFarland*

TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ............................................................................................................1

BACKGROUND ...............................................................................................................1

       A.      Procedural History ...............................................................................1

       B.      McFarland's Efforts at Satisfying His Restitution Obligation.................................2

       C.      Non-Parties Fyre Holdings, Inc. and BZM Media Holdings Inc. ..........................3

       D.      Financings and Transactions in 2023.....................................................................3

THE PROPOSED RESTORATIVE TRANSACTION....................................................5

ARGUMENT ....................................................................................................................6

I.       THIS COURT IS AUTHORIZED TO
       CLARIFY THE FINAL JUDGMENT ...............................................................6

II.      THIS COURT SHOULD CLARIFY THAT THE
       PROPOSED RESTORATIVE TRANSACTION
       DOES NOT VIOLATE THE FINAL JUDGMENT ...........................................7

III.     ALTERNATIVELY THIS COURT SHOULD AMEND
       THE FINAL JUDGMENT TO ALLOW FOR THE
       PROPOSED RESTORATIVE TRANSACTION...............................................8

CONCLUSION.................................................................................................................9

i

TABLE OF AUTHORITIES

Page(s)

Cases

*Bank of Crete, S.A. v. Koskotas*, 733 F. Supp. 648 (S.D.N.Y. 1990) ..............................................6

*Degen v. United States*, 517 U.S. 820 (1996) ...................................................................................6

*Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, Case No. 09-CV-1521 (JCH),
      2012 WL 13024369 (D. Ct. May 10, 2012)........................................................................6

*IGT v. High 5 Games, LLC*, Case No. 17-CV-9792 (ALC),
      2018 WL 2939032 (S.D.N.Y. Apr. 17, 2018).....................................................................6

*In re Tronox Inc.*, 549 B.R. 21, 50 (S.D.N.Y. 2016) ........................................................................7

*In the Matter of William Z. McFarland*, Administrative Proceeding File No. 3-18622.................2

*Jones v. United States Postal Serv.*, Case No. 20-CV-6516 (VM),
      2020 WL 6554904 (S.D.N.Y. Sept. 29, 2020)...............................................................6, 8

*Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. 2006).....................................................7

*N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854 (2d Cir. 1984)........................................6, 8

*Paramount Pictures Corp. v. Carol Pub. Grp., Inc.*,
      25 F. Supp. 2d 372 (S.D.N.Y. 1998)...................................................................................6

*Regal Knitwear Co. v. NLRB*, 324 U.S. 9 (1945) .............................................................................6

*United States v. William McFarland*, Case No. 17-CR-600 (NRB)................................................2

Rules

Fed. R. Civ. P. 60....................................................................................................................................6

Other

Melissa Koenig, *Fraudster Billy McFarland is more than $30M in debt –
      but still plans Fyre Festival 2.0*, N.Y. Post (Mar. 13, 2024) ........................................2, 3

https://www.ycombinator.com/documents#about ...........................................................................4

## INTRODUCTION

William Z. ("Billy") McFarland, by and through his undersigned counsel, respectfully submits this memorandum of law and the attached exhibits in support of his motion seeking entry of an Order clarifying the terms of the Final Judgment herein so as to ensure that, as detailed below, a planned cancellation and unwinding of certain earlier financings is permissible under Section VI of Final Judgment, or, in the alternative, an Order amending the Final Judgment to permit such planned cancellation and unwinding.

## BACKGROUND

A.    Procedural History

On July 25, 2018 the SEC initiated the instant enforcement action against William Z. ("Billy") McFarland ("McFarland"), Fyre Media, Inc., Magnises, Inc. and two other individuals alleging that McFarland "induced over 100 investors to invest more than $27.4 million in Fyre Media and Magnises" and "engaged in a host of deceptive and fraudulent acts in furtherance" thereof. (Docket No. 3 at ¶ 1.) McFarland did not contest the SEC's allegations. Rather, he consented to entry of the Final Judgment (Docket No. 6), which, among other things, restrained and enjoined him from future violations of the federal securities laws and directed that he:

> is permanently restrained and enjoined from, directly or indirectly, including, but not limited to, through any entity he owns or controls, participating in the issuance, purchase, offer, or sale, of any security, provided, however, that this Final Judgment shall not prevent him from purchasing or selling securities for his own personal account.

(*Id.*, Section VI.)[1] In entering the Final Judgment, this Court "retain[ed] jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment." (*Id.*, Section X.)

    B.    <u>McFarland's Efforts at Satisfying His Restitution Obligation</u>

    Following his release from custody in August 2022 after service of the term of imprisonment imposed in *United States v. William McFarland*, Case No. 17-CR-600 (NRB), McFarland announced his plans to return to work with a focus on paying his $26,378,682 restitution obligation. To date, he has paid more than $50,000 towards satisfaction of that restitution obligation from income he has earned since his release from custody as a media personality and marketing consultant, and through paid speaking engagements, including as a regular speaker before the Association of Certified Fraud Examiners (ACFE). More recently, McFarland has started laying the foundation for earning the funds needed to make a sizeable restitution payment. For example, McFarland has partnered with a major production company for a streaming documentary following his life. He is also working with a reputable festival production and management company for purposes of organizing Fyre Festival 2.0, a music and arts festival similar to Fyre Festival. As McFarland has publicly stated, Fyre Festival 2.0 is "the most tangible way to repay the $26 million that I owe [in restitution], and having real partners gives an opportunity in the next five to seven years to actually pay back that $26 million." *See* Melissa Koenig, *Fraudster Billy McFarland is more than $30M in debt – but still plans Fyre Festival 2.0,*

---

[1]    In connection with his resolution of the instant matter, Mr. McFarland also consented to entry of an Order Instituting Administrative Proceeding in *In the Matter of William Z. McFarland*, Administrative Proceeding File No. 3-18622, dated August 3, 2018, pursuant to which he agreed to be "barred from participating in any offering of a penny stock." (Exhibit 1.)

N.Y. POST (Mar. 13, 2024) (found at https://nypost.com/2024/03/13/us-news/billy-mcfarland-more-than-30m-in-debt-but-still-plans-fyre-festival-2-0/) (last visited Apr. 30, 2024).

      C.    <u>Non-Parties Fyre Holdings, Inc. and BZM Media Holdings Inc.</u>

      To conduct business following his release from custody, McFarland incorporated non-parties BZM Media Holdings Inc. ("BZM Media") and FYRE Holdings, Inc. ("Fyre") in Delaware on March 22, 2023 and July 6, 2023, respectively.[2] McFarland formed BZM Media to manage the media aspects of his life (such as his public appearances, speaking engagements and even the sale of the rights to his life experiences for a Broadway production) and, along with a co-founder, formed Fyre to conduct business relating to Fyre Festival 2.0 and the licensing of the Fyre brand.[3]

      D.    <u>Financings and Transactions in 2023</u>

      Pursuant to form contracts known as "SAFE" agreements that he downloaded from the website of a reputable startup accelerator and venture firm, in 2023 seven friends of McFarland entered into SAFE agreements (the "SAFE Noteholders") for a total of $267,200 (the "2023 SAFE

---

[2]    Although they did not exist when this Court entered the Final Judgment, BZM Media and Fyre may be bound by the Final Judgment and therefore separately seek to intervene herein and join in the instant motion so as to ensure that no question exists as to their compliance with the Final Judgment.

[3]    McFarland's Fyre co-founder received an approximate 11.11% outstanding interest in Fyre without having made a capital contribution (essentially "sweat equity").

Financing").[4] McFarland also agreed to share a portion of BZM Media revenue with some SAFE Noteholders (the "Revenue Share") and promised a portion of his personal interest in BZM Media and Fyre to others who provided additional financing (the "Equity Promises").[5] The 2023 SAFE Financing, the Revenue Share and the Equity Promises are collectively referred to herein as the

---

[4]    "SAFE" is an acronym for "simple agreement for future equity," which is a financing tool commonly used by startup companies. SAFEs are simple and straightforward, and far less complex than traditional private offerings closed with heavily-lawyered documentation. As described by Y Combinator (a technology startup accelerator and venture capital firm), "[a]s a flexible, one-document security without numerous terms to negotiate, safes save startups and investors money in legal fees and reduce the time spent negotiating the terms of the investment. Startups and investors will usually only have to negotiate one item: the valuation cap. Because a SAFE has no expiration or maturity date, there should be no time or money spent dealing with extending maturity dates, revising interest rates or the like." *See*    https://www.ycombinator.com/documents#about (last visited Apr. 30, 2024). A copy of the SAFE template that McFarland downloaded from Y Combinator and used in connection with the 2023 SAFE Financing is attached hereto as Exhibit 2.

[5]    One individual entered into a $200,000 SAFE agreement. The remaining six individuals entered into SAFE agreements totaling $67,200. All of the SAFE Noteholders knew that the future Fyre equity they could potentially acquire would come from McFarland's personal equity stake in Fyre. Additionally, three individuals (including the aforementioned individual who entered into a $200,000 SAFE agreement) advanced a total of $275,000 to Fyre, BZM Media and McFarland but never entered into any agreements for the same.

"2023 Financings." The counterparties to such transactions are collectively referred to herein as the "Funders." McFarland did not consult an attorney in connection with the 2023 Financings. All such transactions are detailed on the table attached hereto as Exhibit 3.

THE PROPOSED RESTORATIVE TRANSACTION

Upon reflection and following consultation with counsel concerning the Final Judgment, McFarland concluded that it is necessary to unwind the 2023 Financings and return all money raised from the Funders (the "Proposed Restorative Transaction"). To be clear, McFarland believes that Section VI of the Final Judgment permits the Proposed Restorative Transaction because it is structured as an explicitly permissible "purchas[e of] . . . securities for his own personal account." Still, he does not want there to be any question about his compliance with the Final Judgment.

As planned, the Proposed Restorative Transaction would be accomplished as follows: the Funders intend to sign new agreements assigning their respective rights under the 2023 Financings to McFarland in exchange for which the Funders will receive a complete refund of all amounts they originally provided.[6] Drafts of the proposed contracts for the Proposed Restorative Transaction are attached hereto as Exhibits 4-7.[7]

---

[6]    One of the Funders will receive a refund in the form of a promissory note payable by McFarland to such Funder (the "Promissory Note").

[7]    The names of the Funders are omitted from Exhibit 3 and the proposed forms of contract attached as Exhibits 4-7 to protect their identity and thereby avoid the need to file the instant motion under seal.

<u>ARGUMENT</u>

I.

THIS COURT IS AUTHORIZED TO
<u>CLARIFY THE FINAL JUDGMENT</u>

Section X of the Final Judgment, Rule 60(b)(5) of the Federal Rules of Civil Procedure and this Court's inherent authority to enforce its lawful orders provide this Court with the jurisdiction and authority to clarify the Final Judgment. *See Degen v. United States*, 517 U.S. 820, 823 (1996) ("Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities"). Indeed, "[i]t is undoubtedly proper for a district court to issue an order clarifying the scope of an injunction in order to facilitate compliance with the order and to prevent 'unwitting contempt.'" *Paramount Pictures Corp. v. Carol Pub. Grp., Inc*., 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998) (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945)); *accord IGT v. High 5 Games, LLC*, Case No. 17-CV-9792 (ALC), 2018 WL 2939032, at *3 (S.D.N.Y. Apr. 17, 2018).

"Clarifications of previously issued orders 'add certainty to an implicated party's efforts to comply with the order and provide fair warning as to what future conduct may be found contemptuous,' and 'may be obtained on motion or made *sua sponte* by the court.'" *Jones v. United States Postal Serv*., Case No. 20-CV-6516 (VM), 2020 WL 6554904, at *5 (S.D.N.Y. Sept. 29, 2020) (quoting *N.A. Sales Co. v. Chapman Indus. Corp*., 736 F.2d 854, 858 (2d Cir. 1984)). Thus, "courts 'that issue injunctions can and should give declaratory guidance defining the meaning and scope of injunctions issued.'" *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, Case No. 09-CV-1521 (JCH), 2012 WL 13024369, at *5 (D. Ct. May 10, 2012) (quoting *Bank of Crete, S.A. v. Koskotas*, 733 F. Supp. 648, 650 (S.D.N.Y. 1990)).

II.

THIS COURT SHOULD CLARIFY THAT THE
PROPOSED RESTORATIVE TRANSACTION
DOES NOT VIOLATE THE FINAL JUDGMENT

McFarland believes that the Proposed Restorative Transaction complies with the Final Judgment. More particularly, McFarland believes that, although he is enjoined from "participating in the issuance, purchase, offer, or sale, of any security," Section VI of the Final Judgment contains a critical carve-out – "this Final Judgment shall not prevent [McFarland] from purchasing or selling securities for his own personal account" – that allows for the Proposed Restorative Transaction.

Initially, McFarland notes that the unwinding of the 2023 Financings is in substance not a new issuance, purchase, offer or sale of any security, but instead would amount to the unwinding of already-closed financings that, if not unwound, could potentially be interpreted as inconsistent with the Final Judgment. Critically, though, and separate and apart from whether the 2023 Financings were consistent with the Final Judgment, the Proposed Restorative Transaction is explicitly structured so as to only involve the transfer of the previously-conveyed interests to McFarland in his individual capacity "for his own personal account." *See In re Tronox Inc.*, 549 B.R. 21, 50 (S.D.N.Y. 2016) ("Terms of an injunction are construed according to general principles of contract law. This Court must defer to the plain meaning of the language and the normal usage of the terms selected") (internal citations omitted) (citing *Mastrovincenzo v. City of New York*, 435 F.3d 78, 103 (2d Cir. 2006)).

At the same time Mr. McFarland is profoundly sensitive to the scrutiny he has been and will continue to be under as he works to organize Fyre Festival 2.0. The laws governing securities transactions are complex and the 2023 Transactions were variously documented and

executed in a manner that reflects the lack of counsel's involvement. McFarland understands and appreciates that the Proposed Restorative Transaction – which is intended to restore all involved to *status quo ante*[8] – could itself be misunderstood as outside the Final Judgment's "personal account" exemption, as an impermissible recession offer or as otherwise inconsistent with the Final Judgment.

Given the foregoing, McFarland is approaching the Court and transparently detailing what has occurred and what he seeks to do to because he does not want to expose himself or his professional colleagues to any potential liability (founded or otherwise). He therefore seeks to clarify the circumstances associated with the 2023 Financings so that he (and the other entities and individuals involved therewith) can enter into the Proposed Restorative Transaction (thereby returning all of the Funders' funds to them[9]) and, in doing so, be certain of their compliance with the Final Judgment. *See, e.g., Jones*, 2020 WL 6554904, at *5 ("Clarifications of previously issued orders 'add certainty to an implicated party's efforts to comply with the order and provide fair warning as to what future conduct may be found contemptuous,' and 'may be obtained on motion or made *sua sponte* by the court'") (quoting *N.A. Sales Co.*, 736 F.2d at 858).

III.

ALTERNATIVELY THIS COURT SHOULD AMEND
THE FINAL JUDGMENT TO ALLOW FOR THE
PROPOSED RESTORATIVE TRANSACTION

If the Court concludes that the Proposed Restorative Transaction does not fall within the "own personal account" exemption in Section VI of the Final Judgment and/or that the

---

[8]    *See* Footnote 6, *supra*, regarding the Promissory Note.

[9]    *See* Footnote 6, *supra*, regarding the Promissory Note.

Final Judgment does not otherwise allow for it, McFarland respectfully requests that the Court amend the Final Judgment to allow for the Proposed Restorative Transaction. Such an amendment would be wholly consistent with important goals central to the Final Judgment.

CONCLUSION

For all the foregoing reasons, William Z. ("Billy") McFarland respectfully requests that this Court enter an Order clarifying that the Proposed Restorative Transaction does not violate the Final Judgment, or, in the alternative, enter an Order amending the Final Judgment to allow for the Proposed Restorative Transaction.

Dated: May 1, 2024
     New York, NY

Respectfully submitted,

PROTASS LAW PLLC

By: _____
    Harlan Protass
260 Madison Avenue
22nd Floor
New York, NY 10016
T. 212-455-0335
F. 646-607-0760
hprotass@protasslaw.com

*Counsel for Defendant*
*William Z. ("Billy") McFarland*

<u>CERTIFICATION</u>

The undersigned attorney hereby certifies that the foregoing MEMORANDUM OF LAW IN SUPPORT OF WILLIAM Z. ("BILLY") McFARLAND'S MOTION TO CLARIFY FINAL JUDGMENT, dated May 1, 2024, contains 2,177 words and otherwise complies with this Court's Individual Practice Rules.

By: _____
                Harlan Protass